[Civ. No. 4812. Third Appellate District.—December 27, 1932.]

In the Matter of the Estate of F. W. HENDERSON, Deceased. FERNE S. HENDERSON, Appellant, v. ALLEN A. HENDERSON, as Executor, etc., Respondent.

David E. Peckinpah for Appellant.

H. K. Landram for Respondent.

PULLEN, P. J.—On July 26, 1931, F. W. Henderson died testate, leaving him surviving his wife, Ferne A. Henderson, and a son, the offspring of a former marriage.

By his will he appointed his son executor and residuary legatee of a considerable estate. Referring to his wife in his will he said "To Ferne A. Henderson, my wife, I give nothing for the reason that she is already provided for and has sufficient for her needs."

Included in his estate were two pieces of real property, one an eighty-acre alfalfa and dairy ranch, appraised at $12,000 and hereafter referred to as the Lingard property, and the other a house and lot in the city of Atwater, appraised at $2,300.

The widow filed a petition asking the court to set aside to her as a homestead the Lingard property, but this the court refused to do and in lieu thereof set aside as a homestead the Atwater place. She being dissatisfied with the order, has appealed therefrom.

The petitioner, who is the appellant herein, concedes the Lingard property was separate property of her husband, it having been acquired by him many years before his marriage to appellant but was, by agreement, so appellant claims, transmuted into community property; as to the Atwater property she contends it was not property belonging to deceased and therefore formed no part of his estate.

Let us first direct our attention to the claim of appellant that the Lingard place was transmuted from separate to community property.

About 1916 appellant was first employed by deceased as a stenographer and continued more or less consistently to so act as his stenographer and confidential secretary until their marriage in July, 1929. The deceased had been previ-

ously married, it having been terminated by a final decree of divorce very shortly before the marriage of appellant herein to deceased. The will from which the reference to Ferne A. Henderson has already been quoted was executed September 24, 1929, approximately two months after the marriage.

The contention of the appellant is that immediately after the marriage an agreement was made between Henderson and herself whereby the character of the Lingard property was changed from separate property into community property.

Appellant testified that while she was employed by deceased as his stenographer and clerk they frequently discussed the Lingard property and made frequent trips to the property and conversed as to what portion should be planted to alfalfa, and Henderson told her that when they were married it would become their home and referred to the property as "ours". She further testified that within a few months after she and deceased first met they planned to marry. At one period of time prior to her marriage she received from deceased practically the entire income from the property for herself.

A day or two after the marriage appellant testified that Henderson said to her, "Well dear, we worked hard for that 80 acres out there, the Lingard ranch, and I am giving you a half interest, a community interest in it for a wedding present . . . " He said, "You have worked hard, dear, since then and we both have worked hard and we will use these bonds to build us a home there or improve that one that is there and now I want you to have it . . . and then Fred said to me, he said, 'Ferne, I will turn over one of the cream checks one month to you, I will endorse it over to you as your income from the place, your income from it, and I will keep the other because now that we are married, of course I will have to pay our living expenses,' and he said, 'Is that satisfactory?' And I said, 'Anything you do, dear, is satisfactory to me'; then I said to him, 'When we get back you will have to make a deed to me.' He said 'No, I won't have to make a deed to you, dear, but whenever we sell the place, why you will have to sign a deed and the next time we lease it of course you will have to sign the lease.' "

Upon one occasion after the marriage of Henderson to appellant he, in the presence of appellant and a mutual friend, as they were driving past the Lingard property, said to the friend, ''This belongs, this ranch belongs to Ferne and me'', and he said they hoped they were going to build a home there.

The foregoing constitutes substantially all the evidence offered in support of the contention of appellant that Henderson had bestowed upon her a community interest in the Lingard property. No declaration or transfer concerning the property was reduced to writing.

Section 158 of the Civil Code provides: ''Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might if unmarried; subject, in transactions between themselves, to the general rules which control the actions of persons occupying the confidential relations with each other, as defined by the title on trusts.''

It is admitted, of course, that a husband and wife may alter their legal relations one toward the other concerning their property interests; and may change the character of their property from separate to community property. The law requires such a contract to be in writing unless it has been fully executed by one of the parties, in which case it is taken out of the statute. (*Martin* v. *Pritchard*, 52 Cal. App. 720, 724 [199 Pac. 846]; *Estate of Wahlefeld*, 105 Cal. App. 770 [288 Pac. 870].)

Whether or not the conversations as narrated by appellant took place, and if so, whether or not the statements and subsequent conduct of Henderson indicated an intent to convey a community interest in the property to his wife, were questions of fact to be determined by the trial court.

Appellant relies upon her own testimony almost without corroboration to establish a parol transmutation of the Lingard ranch from separate to community property. Henderson, the only person who could testify as to whether or not these conversations occurred, and what was said, is dead. Mrs. Henderson has a very personal and financial interest in the outcome of the controversy between herself on the one hand and the son of her deceased husband on the other.

As Mr. Justice Burnett said in the case of *Truman* v. *Ellison,* 37 Cal. App. 204, 208 [174 Pac. 396, 398] : ''Indeed it is true that actions to enforce oral agreements claimed to have been made with persons who are dead involve a dangerous assault upon property rights, and they are often supported by false testimony and they naturally and reasonably excite suspicion. And while they may be genuine and worthy of confirmation, they require the closest and most careful scrutiny to prevent injustice being done. (*Wall's Appeal,* 111 Pa. St. 460 [5 Atl. 220, 56 Am. Rep. 288].) They afford and carry opportunity for fraud against the estates of deceased persons and a great temptation to perjury on the part of the disappointed or avaricious relatives. (*Hinkle* v. *Sage,* 67 Ohio St. 256 [65 N. E. 999].) Such considerations could not be laid out of view by the trial judge.''

Undoubtedly it occurred to the very able and learned trial judge that the deceased was an attorney by profession, of many years standing, who, if he wished to clearly and unquestionably convey to his wife a community interest in the property in question, could have done so, not by a casual verbal statement out of the presence of witnesses but by the usual and customary mode known to lawyers, namely, by some written evidence of change of ownership, or by a definite reference thereto in his will. No one could have been more familiar with the weakness of such evidence of title than the deceased himself. It is not the case of a layman inexperienced in the formalities of the law. So also the wife in this case was not the usual bride unacquainted with the laws of descent and the rules of evidence. She appreciated the situation for she testified she said, ''You will have to give me a deed to it then, won't you?'' and he replied, ''No, but if we sold the property that I would have to sign the deed . . . ''

A portion of the property was, within eighteen months after the conversation detailed above, transferred by deed from Henderson to San Joaquin Light and Power Company, in which conveyance Henderson did not ask his wife to join, a circumstance that indicates quite strongly where he considered the title to repose.

The fact that appellant received the cream checks from the Lingard property every other month after marriage is

proof of nothing, particularly when we recall that a similar arrangement had existed long before the marriage.

It also appears in evidence that during the years of their acquaintanceship and prior to their marriage Henderson gave appellant various sums of money from time to time aggregating between $7,500 and $10,000 over and above moneys paid her for services as his stenographer. At the time of the death of Henderson there stood in her name title to two pieces of real property, a 20-acre tract in Turlock and an 800-acre ranch in Mariposa County. When interrogated as to who made the payments on these pieces appellant testified she did, but when confronted with entries in the check-books of deceased she qualified her statements by saying that perhaps Henderson paid in the first instance but she reimbursed him later, but no evidence of such repayments or entries appears in the record. We refer to this line of testimony as indicating perhaps that Henderson had in mind property such as the above when he drafted the paragraph in his will.

We believe the court was fully justified and the evidence warrants the finding of the court that the Lingard property was not community property.

It is the contention of appellant that the Atwater property was not at the time of Henderson's death the community property of himself and appellant.

On the recommendation of the deceased his brother E. J. Henderson loaned to one Gonzales $700 on the Atwater property, secured by a deed of trust. Gonzales was unable to repay the principal or interest on the loan and finally executed a deed conveying the property to E. J. Henderson. About this time E. J. Henderson notified his brother, the deceased, that Gonzales was in default, whereupon the deceased, having originally recommended the loan, stated to E. J. Henderson that he supposed he would have to take the loan over and he thereupon paid to E. J. Henderson the principal and accrued interest. Upon the receipt thereof E. J. Henderson signed and delivered to deceased a grant deed, with himself as grantor, and describing the Atwater property, but leaving the name of the grantee blank. There can be no question the instrument was void as a deed (*Upton* v. *Archer,* 41 Cal. 85, 87 [10 Am. Rep. 266]; *Jones* v. *Coulter,* 75 Cal. App. 540, 547 [243 Pac.

487]), but even if the legal title remained in E. J. Henderson at the death of F. W. Henderson, nevertheless F. W. Henderson having paid to E. J. Henderson the full purchase price of the property, and having assumed possession and made expenditures thereon and improved the same, he had an equitable ownership therein, and could during his lifetime have compelled E. J. Henderson by an action in specific performance to convey the legal title of the property to him. Subsequent to the death of F. W. Henderson, his executor made such demand and a deed was executed and delivered conveying the property to Allen A. Henderson as executor of the estate of F. W. Henderson, deceased. This, in our opinion, vested title in the estate and it became community property of F. W. Henderson by virtue of its relation back to the date of payment.

"We are satisfied that it must be held, in view of the deed made by Kaiser to the executor of the will of John Newlove subsequent to his death in execution of the agreement of sale, that the Newlove ranch must be treated as part of the property of deceased at the time of his death."

"As we have before said, the effect of the conveyance of the Newlove ranch by Kaiser to the executors of the will of John Newlove was to vest a legal title to the property in the same manner as if the deed had been executed prior to the death of John Newlove." (*Newlove* v. *Mercantile Trust Co.*, 156 Cal. 657 [105 Pac. 971, 974].)

We find no error in the conclusion of the trial court and the order appealed from is affirmed.

Thompson (R. L.), J., and Plummer, J., concurred.