[Civ. No. 2784.   Fourth Dist.   Aug. 25, 1941.]

ALVIN H. MARVIN et al., Appellants, v. EDITH L. MARVIN et al., Respondents.

Tanner, Odell & Taft and S. W. Odell for Appellants.

John H. Foley, Euler & Subith, Louis J. Euler and Fred E. Subith for Respondents.

BARNARD, P. J.—In this action plaintiffs sought to quiet their title to two pieces of real property claiming that both parcels were the community property of their parents or, in any event, that they were the separate property of their deceased father. The plaintiffs, who are the sons of John W.

Marvin and his first wife, brought the action against his second wife personally and as administratrix of his estate.

On July 28, 1903, John W. Marvin obtained an interlocutory decree of divorce from his first wife in the Superior Court of Los Angeles County. A final decree of divorce was entered on August 3, 1904. Neither the interlocutory nor the final decree mentioned any property belonging to the parties and it seems probable that they had none since the two properties here in question were purchased by John W. Marvin on contract in September 1904, and in each case the small down payment was borrowed or obtained from another. The final decree in this divorce case was entered at the request of attorneys for the first wife and she was subsequently married to other men at least twice and possibly three times. The plaintiffs last heard from her in 1918, after which they were unable to find any trace of her, and they rely on the presumption of her death as of 1925.

John W. Marvin married the defendant Edith L. Marvin on April 17, 1905, and they lived together until his death on February 1, 1937. This action was filed on June 18, 1937. The court found in all respects in favor of the defendants and by its judgment decreed that one of the parcels in question, which will be referred to as the Los Angeles property, is the separate property of the defendant Edith L. Marvin, and that the other parcel, which will be referred to as the Santa Monica property, is the community property of John W. Marvin, deceased, and his widow Edith L. Marvin. From this judgment plaintiffs have appealed.

It is first contended that the interlocutory and final decrees above mentioned are void upon their faces and invalid, with the result that the respondent was never legally married to John W. Marvin and both pieces of real property are the community property of John W. Marvin and his first wife. It appears from the transcript that a verified complaint for divorce on the ground of desertion was filed by John W. Marvin on July 23, 1903. On the same day an instrument was filed which, omitting the title, reads as follows:

"Comes now the defendant named in the above entitled action and enters her appearance therein and declines to answer the complaint filed by the said plaintiff in said action.

"HUNTER & SUMMERFIELD,

"Attorneys for Defendant."

On July 28, 1903, an interlocutory decree signed by N. P. Conrey, Judge, was filed which, among other things, recites that "This cause came on regularly to be heard this 27 day of July, 1903, upon the complaint herein taken as confessed by the defendant, the defendant having appeared and refused to answer." A final decree signed by the same judge was filed on August 3, 1904, which, among other things, recites that this cause came on regularly to be heard on July 27, 1903; that Edwin O. Edgerton then appeared as attorney for plaintiff and Hunter & Summerfield appeared as attorneys for defendant; that the defendant had been served with summons; that the default of the defendant had been duly entered in the manner provided by law; that evidence had been taken and an interlocutory decree entered and filed; that one year had elapsed and no appeal had been taken from the interlocutory decree; that on July 30, 1904, the defendant appeared through her attorneys Hunter & Summerfield and in open court moved for the entry of a final decree of divorce; and that this motion was granted.

The appellants argue that both of these decrees are invalid because the instrument filed by the attorneys for the defendant was not verified, because it was not a sufficient notice of appearance under section 1014 of the Code of Civil Procedure, and because the hearing was had four days later and it therefore appears that the defendant could not have had the five days' notice of trial provided for in section 594 of the Code of Civil Procedure. No verification of the instrument filed by the defendant was necessary. It was, in effect, an admission of the matters alleged in the complaint. Whether or not it was sufficient, in itself, to constitute a waiver of notice of further proceedings in the action there is nothing in the record before us which affirmatively shows that notice was not, in fact, waived and all presumptions are in favor of the judgment as entered. The interlocutory decree indicates that an appearance was made in behalf of the defendant at the time of the hearing on July 27, 1903, and the final decree, which was entered at the request of the defendant's attorneys, specifically recites that these same attorneys appeared for the defendant at the hearing on July 27, 1903. Both decrees recite that the cause came on regularly to be heard on July 27, 1903. It not only appears that the final decree was entered at the request of the defendant therein but she acted upon it and married another man shortly there-

after. Regardless of any other consideration a waiver of notice, if any deficiency in that regard existed, sufficiently appears. The judgment was accepted and acted upon by both parties and was in no way attacked for more than thirty years. ■ As was said in *Estate of Keet*, 15 Cal. (2d) 328 [100 Pac. (2d) 1045] : "On a collateral attack, any attempt to show mere error of the court must necessarily fail. A judgment is conclusive unless wholly invalid on its face, that is, unless its invalidity appears from the judgment roll." While the entire judgment roll in the divorce action is not before us no invalidity appears on the face of that portion which is here presented.

■ Even if the divorce decree was valid the appellants argue that the Los Angeles property was acquired by their father before a final decree of divorce was entered, and that their mother had a community interest therein which was not affected by his subsequent conveyance of the property to the respondent. They rely on certain testimony that J. W. Marvin was building a small house on this property in June or July, 1904. There is other testimony that the building of this house was not commenced until after the first of September, 1904. There is also evidence that some time during September, 1904, J. W. Marvin purchased this lot on contract for $200 payable $75 in cash and $25 a month for five months, that he borrowed $75 for the first payment from his brother, and that he received a deed to the property on February 15, 1905. There is ample evidence that he purchased the property after the final decree of divorce was entered. He married the respondent on April 17, 1905, and conveyed the property to her by a deed which was recorded on October 27, 1906, there being evidence that he gave this property to her as a birthday present. The court found and decreed that this property is the separate property of the respondent Edith L. Marvin and the evidence supports that finding and conclusion.

■ The appellants contend that the Santa Monica property was the separate property of their father and that the court's finding that it was the community property of John W. Marvin, deceased, and his widow Edith L. Marvin, is not sustained by the evidence and is contrary to law. It appears that Marvin purchased this property on a written contract dated September 7, 1904, some seven months prior to his

marriage to the respondent. The purchase price was $375, payable $10 in cash and $10 a month. The contract which was introduced in evidence had $10 payments endorsed thereon for practically every month until September, 1907, when the property was deeded to Marvin. It is conceded that it was the separate property of Marvin at the time of its acquisition, but the respondent contends that it was, by the agreement of herself and her husband, transmuted into community property.

■ Even where property is purchased with the separate funds of one of the spouses, except where there is a written agreement, the true intention of the parties may be shown by parol. (*Minnich* v. *Minnich,* 127 Cal. App. 1 [15 Pac. (2d) 804].) In *Title Insurance etc. Co.* v. *Ingersoll,* 153 Cal. 1 [94 Pac. 94], the court said: ''There can be no doubt that a husband and wife may by contract transmute the separate property of either or both into community property. . . . But it is not essential in such a case for the husband to show any express agreement on the part of the wife. The gift or change in the *status* of the property may be shown by the very nature of the transaction or appear from the surrounding circumstances. . . . The question in such cases is whether the evidence of the transaction and its surrounding circumstances clearly shows the intention of the wife to change the *status* of the property.'' It has been held that a showing that no money other than community earnings was used in buying the property is amply sufficient to sustain a finding that it is community property. (*Pretzer* v. *Pretzer,* 215 Cal. 659 [12 Pac. (2d) 429].) A finding that property is community property is amply supported by evidence tending to show an executed oral agreement to that effect between the parties. (*Kenney* v. *Kenney,* 220 Cal. 134 [30 Pac. (2d) 398].) In that case, the parties had orally agreed, both before and after marriage, that all of their property was to belong to them equally or ''fifty-fifty.'' The court there said that the existence and consummation of this agreement was established and confirmed by the acts and conduct of the parties during their marital life.

■ In the instant case it appears that the first $50 or $60 paid on this lot was advanced by the respondent under an agreement with Marvin that the property was to become community property upon their marriage, and that after their marriage in April, 1905, the remaining payments were made

from Marvin's earnings. The respondent testified that they looked at the property in September, 1904; that Marvin said he would like to buy it but was unable to handle it; that she asked him if she could not help him and he replied that he did not want to use her name; that she mentioned the fact they intended to be married later on and asked "why not let me make the payments until we are in a position to take care of it after we are married"; that Marvin replied, "If you do make those payments, after we are married it will be our community property"; that she assented and paid the first $10; and that she made the other payments until they were married. She further testified that immediately after their marriage and in the presence of several people Marvin told of this arrangement, stating that he had promised the respondent it would be their community property after they were married, and said: "I am renewing that promise." All of these facts are corroborated by other witnesses, including a brother of the deceased. A number of witnesses testified that Marvin referred to this property as the community property of himself and this respondent over a period of more than thirty years, and that on several occasions he told relatives and friends who were urging him to sell the property that he could not sell it without his wife's consent because it was their community property. There is also evidence that taxes and assessments on this property throughout all of these years were paid from community funds. ■ Whether or not these statements and the conduct of the deceased during this long period indicated an intent on his part to transmute any separate interest he may have had in this property into a community interest with his wife was, at least, a question of fact for the trial court. (*Estate of Henderson*, 128 Cal. App. 397 [17 Pac. (2d) 786].) ■ The entire purchase price for the property was paid out of community earnings with the exception of some $50 or $60 which was paid by the respondent widow and for which she is making no separate claim. Under the rules of law to which we have referred, it cannot be held that the finding that this was community property is not sustained by the evidence.

■ The appellants argue that any agreement that this property was to be the community property of the parties was void as against public policy since it was made before the respondent widow secured a divorce from her former hus-

band.  It appears that she secured such a divorce in Texas on April 6, 1905.  The oral agreement, as originally made, did not provide that the respondent was to obtain a divorce and it was merely an agreement as to what should be done with respect to a particular thing if and when they should be married.  Assuming that there was anything illegal in connection with the original agreement there was nothing to prevent the parties from making and acting upon a similar agreement after their marriage, which was done.  The intention of the parties is clear and nothing here appears which justifies the setting aside of the agreement which they made and recognized for more than thirty years, as contrary to public policy.

The judgment is affirmed.

Griffin, J., and Mundo, J., *pro tem.*, concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 23, 1941.