[Civ. No. 13749. First Dist., Div. One. May 20, 1949.]

Estate of RAYMOND THEODORE RAPHAEL, Deceased. HARRY RAPHAEL, Individually and as Administrator, etc., Appellant, v. BERTHA RADO RAPHAEL, Respondent.

Albert A. Axelrod for Appellant.

Holbrook & Tarr, W. Sumner Holbrook, Jr., and Clyde P. Harrell, Jr., for Respondent.

WARD, J.—As administrator and as brother and heir at law of the deceased, Harry Raphael appeals from the judgment and modified judgment decreeing "that all of the estate of RAYMOND THEODORE RAPHAEL, both real and personal, on the date of the death of said deceased was the community property of RAYMOND THEODORE RAPHAEL and his widow, BERTHA RADO RAPHAEL." The appeal taken in the capacity of administrator of the estate was dismissed by stipulation at the oral argument. (See *Estate of Babb,* 200 Cal. 252, 255 [252 P. 1039]; *Estate of Ross,* 179 Cal. 358, 360 [182 P. 303]; *Estate of Murphy,* 145 Cal. 464, 467 [78 P. 960].)

The proceeding began with the filing by the administrator

of a "Petition for Partial Distribution and Petition for Order Authorizing Administrator to Pay Attorney's Fees" wherein it was alleged that all of the decedent's estate was his separate property and that decedent's widow and his brother, Harry Raphael, were entitled to have the estate distributed to them "share and share alike" and praying that the real property described in Exhibit "A" attached to the petition be distributed to them "share and share alike." Appellant contends that when respondent filed written objections to said petition she did not deny the foregoing allegations. That there is no merit in this contention can be seen from the fact that in her objections respondent alleged that the "Administrator is asserting that the entire estate of decedent was the separate estate of the deceased, whereas, as a matter of fact, and in law, a substantial part of said estate was and is the community property of said decedent and his surviving widow." Furthermore, when the matter first came before the trial court respondent's counsel stated that the petition for partial distribution was opposed "because of the fact that it is alleged and contended by the administrator that the estate is the separate property, which, as a matter of fact, we deny. We allege in our proceedings that it is community property."

Subsequently respondent filed a "Petition for Order to Determine Interest in Estate" setting forth her claim to "all of the community property and one-half (½) interest in the separate property." Appellant answered that all of the estate was decedent's separate property and that he and respondent were each entitled to have distributed a one-half interest therein. When respondent's counsel suggested that appellant's petition be set over, appellant's counsel pointed out that "There are two ways to determine title to property in these circumstances; either by a petition for partial or final or ratable distribution, or on a Petition to Determine Heirship. We have filed a petition for partial distribution, which Your Honor has partly heard and which is now at issue, the widow having filed an answer and objections, and having alleged in that petition the very same things that she alleges in this petition for determining heirship ... We are entitled to a determination on this petition [for partial distribution]. The issue is whether or not this property is separate or community, and we are asking Your Honor to hear the evidence and make a finding." Thereafter, respondent moved for an order consolidating her petition and the petition for partial distribution. In opposition thereto, appellant's counsel filed an affi-

davit in which he stated that "It is true that the evidence to be presented . . . on the petition for partial distribution and the petition to determine heirship is identical in many respects; and that the administrator is willing to have the Honorable, Judge Fitzpatrick, on the petition for partial distribution, determine any and all issues that may be presented in the petition to determine heirship with respect to any of the property belonging to the estate that is not included in the petition for partial distribution but that the said attorneys for said widow are not willing to have Judge Fitzpatrick determine said issue and that the said motion . . . is an endeavor . . . to divest the jurisdiction of Judge Fitzpatrick from making a decree of partial distribution . . ."

■ Appellant claims that the issues were only joined with respect to the real property described in Exhibit "A" attached to the petition. At the final hearing, however, respondent produced evidence as to the community character of all of the property in the estate. Appellant made no objection as to the admissibility of such evidence. He is, therefore, in no position to complain that the trial court was limited to determining the nature of the real property described in Exhibit "A." "The law is well settled that even where issues are not specifically alleged in a complaint or other pleading, if evidence is introduced on those issues without objection, such issues are properly involved in the case. The objection may not properly be made for the first time on appeal that such issues were not presented by the pleadings. (*McAllister* v. *Union Indemnity Co.*, 2 Cal.2d 457 [32 P.2d 650, 42 P.2d 305]; *Northwestern M. F. Assn.* v. *Pacific W. & S. Co.*, 187 Cal. 38 [200 P. 934]; see cases collected 14 Cal.Jur., p. 974, § 62.)" (*Guay* v. *American President Lines,* 81 Cal.App.2d 495, 515-516 [184 P.2d 539].)

The lower court made the following findings: "III. That it is a true fact that at the time of the marriage of the said decedent, RAYMOND THEODORE RAPHAEL, and his said widow, BERTHA RADO RAPHAEL, to wit: August, 1939, all of the estate owned or possessed by RAYMOND THEODORE RAPHAEL was his own separate property; that subsequent to the date of said marriage . . . RAYMOND THEODORE RAPHAEL transmuted all of his property, both real and personal, from its previous separate character to the community property of the said RAYMOND THEODORE RAPHAEL and BERTHA RADO RAPHAEL, his wife, by an oral agreement which was fully executed and cor-

roborated by documentary evidence including income tax returns filed by or on behalf of RAYMOND THEODORE RAPHAEL and his said wife, BERTHA RADO RAPHAEL. IV. . . . that on the date of the death . . . all of the property . . . was the community property of said decedent and his said widow . . .'' The petition for partial distribution was denied without prejudice. When appellant's motion for a new trial was denied, a modified judgment was entered wherein the words ''without prejudice'' were eliminated from the order denying the petition for partial distribution.

The basic contention made on this appeal is that paragraphs III and IV of the findings are not supported by the record. In disposing of such a contention, this court's power begins and ends with a determination as to whether there is any substantial evidence to support the findings. (*Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689] ; *Estate of Meister*, 77 Cal.App.2d 487 [175 P.2d 574].)

Appellant testified that the property involved was distributed to the decedent under the decree of final distribution in the *Matter of the Estate of Bertha Raphael*, Deceased, No. 78836, on May 9, 1940. Respondent testified that she and the deceased, a cripple, were married in August, 1939—about nine months before he inherited the property from his mother. Death occurred on February 20, 1946. Over appellant's objections that income tax returns would not prove title to the property, respondent was shown certain certified copies of income tax returns for the years 1940 through 1945. These were subsequently received by the trial court. She identified the 1940 return as a joint return for her husband and herself, whereas the 1941 through 1944 returns were her returns in which she reported half of the total earnings of her husband and herself. She related various conversations with the deceased. The weight of such testimony as to the statements of her deceased husband was for the trial court to determine. (*Estate of Henderson*, 128 Cal.App. 397 [17 P.2d 786].) It was for the court to believe or disbelieve her when she testified that in February, 1940, ''He told me that now that we were married, that we were partners, and marriage is a partnership, and we had to file taxes, and he said that everything he had was mine, and everything I had was his; that we were partners in everything, and everything was fifty-fifty''; that at about the time the 1941 income tax return was prepared he told her, ''Now we are partners, and, dear, everything is fifty-

fifty, and you have half and I have half; we are partners in everything''; and that when the 1942 return was filed, ''he said that we were making some money, and that we were partners in everything . . . that everything we had, we had with each other.''

The 1945 return is a joint return. Respondent testified that her name was signed thereto by appellant and that her husband's name was signed by the accountant. On cross-examination appellant's counsel attempted to show that the reason for filing a joint return was that the Treasury Department had disallowed the claim of community property made in earlier returns; however respondent testified that she never saw the 1945 return until February, 1947, and that appellant had been instructed by the deceased to file a ''separate return, the same as he filed the previous year.'' Respondent further testified that, ''My husband always said we were partners in everything we had.'' She added that at a meeting in the office of appellant's attorney, she had told her former attorney, ''that my husband told me if I have any difficulty in case anything happens, I could prove it through taxes.''

While respondent's testimony indicates that the deceased intended that all the property of himself and respondent should belong to them ''fifty-fifty'' and that, accordingly, he directed appellant to report half of his earnings in his wife's returns, the evidence offered by appellant indicates that the registered public accountant who prepared the income tax returns from information received from appellant split the income entirely on his own initiative. Said accountant testified that a joint return was filed for 1945 because he had been informed by a revenue agent that it was improper for him to file separately showing a community interest in the property. Respondent's counsel testified that there had been no determination by the federal government as to the character of the property and that the Treasury Department had indicated that it would make no adjudication until the probate court had made its decision which decision would then be followed by the government. On cross-examination he was questioned concerning the report made by a revenue agent dated March 25, 1946, wherein it was stated that income had been erroneously reported as community income. He answered that the revenue agent never talked to the decedent and that his report showed ''that all adjustments were discussed with Mr. Harry Raphael and . . . the accountant; no mention is made of Raymond or Bertha; this is all Harry's doings; the wife had nothing to do

with it, and the husband had nothing to do with it.'' Appellant conceded that he caused the investigation. His stand with respect to the 1941-1944 returns being erroneous insofar as they are based upon the property being community property is entirely consistent with his contention that the deceased's estate is all separate property. The evidence introduced by appellant merely shows that a conflict was created which the trial court resolved against him. (*Huber* v. *Huber,* 27 Cal.2d 784 [167 P.2d 708].)

An examination of other cases in which testimony of an oral agreement was held to constitute sufficient proof to support a finding that separate property had been transmuted into community property, indicates that the conclusion reached by the trial court in the present case must be upheld. In *Kenney* v. *Kenney,* 220 Cal. 134 [30 P.2d 398], the husband testified that the parties had orally agreed, both before and after marriage, that all property then owned by them or subsequently acquired was to belong to them equally or ''fifty-fifty.'' The appellate court observed in *Stice* v. *Stice,* 81 Cal.App.2d 792, 798 [185 P.2d 402], that ''the wife testified that the husband 'always said that everything we had was community property —belonged to both of us,' and that 'he said it hundreds of times.' The weight and effect of these items of evidence was, of course, a matter for the trial court to determine.'' In *Durrell* v. *Bacon,* 138 Cal.App. 396, 398 [32 P.2d 644], the husband testified that his wife—who had separate property— told him ''what is mine is yours and what is yours is mine . . . this money will go into a home for us; it is just as much yours as mine.''

Appellant advances several propositions in support of his conclusion that paragraphs III and IV of the findings cannot be sustained on appeal. Appellant urges that there is no evidence of any corroborating documentary evidence establishing an executed oral agreement. The trial court found that the decedent transmuted all of his property from its previous separate character to the community property of himself and his wife ''by an oral agreement which was fully executed and corroborated by documentary evidence including income tax returns filed by or on behalf of RAYMOND THEODORE RAPHAEL and his said wife, BERTHA RADO RAPHAEL.'' As the only documentary evidence corroborating the respondent's testimony is the income tax returns, this finding should be corrected by striking therefrom the word ''including'' and substituting the word ''namely'' in its place. This is not the

first case in which income tax returns showing that community income was split between the spouses have been found to constitute proof of the transmutation of property. In *Heck* v. *Heck*, 63 Cal.App.2d 470, 475 [147 P.2d 110], the appellate court upheld the trial court's construction of "the income tax returns as evidencing an agreement between plaintiff and defendant converting one-half of plaintiff's separate interest in the partnership profits into community property." (Followed in *Stice* v. *Stice, supra.*) ■ All that is required to show an executed oral agreement of transmutation is proof of the parties' acts and conduct in dealing with their property. (*Kenney* v. *Kenney, supra.*) ■ In an executory contract some act remains to be done, while in an executed contract everything is completed at the time of the agreement without any outstanding promise calling for fulfillment by the further act of either party. (*Mather* v. *Mather*, 25 Cal.2d 582 [154 P.2d 684].) ■ The object of the oral agreement of transmutation was fully performed when the agreement was made for it immediately transmuted and converted the separate property of each spouse into community property, and nothing further remained to be done. (See *Martin* v. *Pritchard*, 52 Cal.App. 720 [199 P. 846].) ■ The income tax returns for 1941 through 1944 constitute evidence of the fact that the parties regarded their property as community property.

The income tax returns were properly received by the trial court as declarations against the interest of the decedent. (Code Civ. Proc., §§ 1853, 1870, 1946(1) ; see *Horton* v. *Winbigler*, 175 Cal. 149 [165 P. 423].) They were not offered as declarations of respondent, but as proof of the decedent's practice of reporting his property as community property and of splitting his income with his wife. Respondent's counsel attempted to obtain the decedent's returns but the Department of Internal Revenue would only deliver them to the administrator. Respondent stipulated "that they are identical for each of the years with the ones that Bertha filed." Furthermore, respondent testified that her income tax returns were prepared under the decedent's directions. ■ There is no merit to appellant's contention that the executed oral agreement found by the trial court lacks all the necessary requisites of a valid contract in that it is indefinite and uncertain and therefore unenforceable. The authorities previously cited indicate that the agreement of transmutation may be of the most informal character. (*Kenney* v. *Kenney, supra*; *Stice* v. *Stice, supra*;

*Estate of Sill*, 121 Cal.App. 202 [9 P.2d 243]; and see cases cited, 3 Cal.Jur.10-Yr.Supp. 641.) The "change in the *status* of the property may be shown by the very nature of the transaction or appear from the surrounding circumstances." *Marvin* v. *Marvin*, 46 Cal.App.2d 551, 556 [116 P.2d 151], quoting *Title Insurance etc. Co.* v. *Ingersoll*, 153 Cal. 1, 5 [94 P. 94].)

▇▇ ▪ Similarly, there is no merit to appellant's contention that the oral agreement was one of partnership only. In *Martin* v. *Pritchard, supra,* the husband testified that he and his wife had a "matrimonial partnership." The court held, at page 724, that this evidence was "not such as to require the court to find that [the wife's] interest was joint, or in common or a partnership interest rather than that of community property." The use of the term "partner" in the popular sense does not necessarily import or imply an intention that a legal partnership should result. (*Kloke* v. *Pongratz*, 38 Cal.App.2d 395 [101 P.2d 522].)

▇▇ Appellant also contends that respondent's theory in the lower court was that the increase in the value of the decedent's estate was community property, rather than that the decedent had transmuted his separate property into community property. Assuming this to be the case, it is immaterial that the theory upon which the judgment may be affirmed is not identical with that relied upon by respondent since the trial court's judgment must be affirmed if the findings, supported by the evidence, are sufficient to support the trial court's conclusion that all of the deceased's estate was community property. (*Sears* v. *Rule*, 27 Cal.2d 131 [163 P.2d 443].)

▇▇ The word "namely" is substituted for the word "including" in paragraph III of the findings so that said findings shall state that the oral agreement was "corroborated by documentary evidence, namely, income tax returns . . ."

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 14, 1949. Schauer, J., voted for a hearing.