[Civ. No. 17346. Second Dist., Div. Two. Apr. 19, 1950.]

HELEN LOUISE HOPKINS, Plaintiff and Appellant, v. LAWRENCE E. DETRICK, Defendant and Appellant; MARIE ALDEN HOPKINS, Respondent.

52

Frank M. Gunter for Defendant and Appellant.

Gang, Kopp & Tyre and Hermione K. Brown for Plaintiff and Appellant and Respondent.

MOORE, P. J.—Two appeals are involved. Two separate causes were consolidated for trial, namely, an action for divorce, and a suit to quiet title to the property involved in the complaint for divorce. Two separate judgments were entered based upon two separate decisions. Despite the title of the case, the parties are husband and wife. To avoid confusion they will be referred to as "husband" and "wife." The latter's sister, Marie Alden Hopkins, is an incidental party, husband having sued her to quiet title to a certain real property. Her fortunes go with those of Helen Louise.

Husband and wife were married at Rochester, New York, in 1927. Wife had taken a degree in medicine and was then an interne in an eastern hospital. Husband was a student of medicine, but did not graduate from medical school. He specialized in biochemistry and received his Ph.D. They moved to California where they lived with wife's parents for six years. In 1932 she abandoned the name of her husband and by legal proceeding at Los Angeles was restored to her maiden name. She opened her office for the practice of medicine. In the years that followed a rift that had developed in their romance widened until finally she sued him for divorce.

After the trial the court made findings that husband ''has been guilty of extreme cruelty to plaintiff and has treated plaintiff in a, cruel and inhuman manner, and has caused plaintiff grievous mental and physical suffering without fault on plaintiff's part''; that there is no community property; that all the property in the possession of wife is her own separate estate and all in husband's possession is his separate property.

## There Was Extreme Cruelty

Husband challenges the findings and the evidence as insufficient to support the judgment. There is nothing wanting in the evidence. He upbraided her at home and outside and bruised her arms and back, broke her lamp, tore pages from her Bible, treated her parents with contempt, would not eat breakfast at their table, grievously hurt and distressed her by his lack of affection; remained away from home once for a week and often late at night without acquainting wife of his whereabouts; took away her automobile which she was using as an employee of the city health department; during the long illness of her father husband made such hideous noises at night with his car, the garage door and his entrance into the dwelling that he so aroused the feeble and aged man that the latter could not that night sleep again, to the discomfort and pain of wife. He refused to go with her to visit her sister; disliked all of wife's family, to her emotional distress; he departed merrily from home to join the Army without an expression of regret and did not write his wife for a month. All his letters being impersonal caused her extreme mental anguish. On his return to Los Angeles he first visited with a woman friend before coming home and then did not kiss wife on their meeting. Not only did he cast off all display of gallantry and kindness but he left wife to her own battle for subsistence and success. His income was evidently meager and throughout the years he contributed practically nothing to the maintenance of the home and the household expense. The court found not only the foregoing facts but that husband's putting the entire financial responsibility upon wife caused her grievous mental and physical strain and suffering; that his practice of remaining in bed in the morning and his refusal to join the family at breakfast caused wife unhappiness and embarrassment before her parents; that his failure for many years to bestow upon wife any affection grievously hurt and distressed her—all these things caused her great

emotional distress. The foregoing and other findings read in connection with the quoted, all-embracing finding of grievous mental suffering, complete the factual decision of husband's extreme cruelty. (*Ungemach* v. *Ungemach,* 61 Cal.App.2d 29, 40 [142 P.2d 99] ; *Carlin* v. *Carlin,* 114 Cal.App. 186, 190 [299 P. 543].)

Whether from the evidence a court can be reasonably convinced that a wife has suffered extreme cruelty is to be determined from all the facts including the judicial inspection of the parties, their intelligence, refinement, delicacy of sentiment, and the determination will not be disturbed on appeal. (*LaMar* v. *LaMar,* 30 Cal.2d 898, 900 [186 P.2d 678] ; *Keener* v. *Keener,* 18 Cal.2d 445, 447 [116 P.2d 1] ; *Tompkins* v. *Tompkins,* 83 Cal.App.2d 71, 74 [187 P.2d 840].) Conduct that would cause grievous mental suffering sufficient to constitute extreme cruelty depends upon the circumstances of the case under review. The findings here are sufficient to support a judgment of divorce for extreme cruelty. Conceding that there is evidence tending to show cruelty on the part of wife, the finding that her acts were justified is conclusive in view of substantial evidence in support thereof. (*Martin* v. *Martin,* 79 Cal.App.2d 409, 412 [179 P.2d 655] ; *Norris* v. *Norris,* 50 Cal.App.2d 726, 730 [123 P.2d 847].) Husband is unfortunate in his insistence that he established the defense of recrimination and that he was entitled to a divorce based on wife's mental cruelty for the reason that the court found that her acts did not constitute cruelty. Whether the conduct of wife was such as to warrant a finding of extreme cruelty or whether it was sufficiently culpable to necessitate the denial of the relief sought by her is a question of fact addressed to the trial court. (*Farmer* v. *Farmer,* 79 Cal.App.2d 536, 538 [180 P.2d 55] ; *Witaschek* v. *Witaschek,* 56 Cal.App.2d 277, 279 [132 P.2d 600].)

## THERE WAS NO COMMUNITY PROPERTY

■ The property found to belong to the wife separately consisted of real property and automobiles registered in her name; furniture, moneys in the bank, insurance and annuity contracts; her accounts receivable; her office furniture and equipment. There is an abundance of evidence to support such findings, and the evidence is substantial to support the findings that the personal property in the possession of the husband is his own estate.

The wife testified that at the time of establishing her medi-

cal offices and her bank account in her own name she told the husband of her intention and plan to start out in the right way and that she was putting everything in her own name; that she intended by this to establish her own property as separate; that husband made no objections; that for 10 years every act of the parties in relation to the earnings of the wife showed that they mutually understood and acted upon the oral agreement. The husband retained no control over her bank account; never drew a check upon it; made no deposits in it; never had use of her safety deposit box; never owned her automobiles, but instead the titles to all her possessions were in her own name. Not only did she take title to her home which she purchased with her own funds but she transacted all the business, signed all the papers, made all the payments out of her own earnings. The husband did not even inquire what she did with her moneys, where she kept them or how she used them. The wife recorded a current account with the husband showing that both of them treated her property as her own, his belongings as his own. When husband borrowed from wife, he paid back the sums in exactly the same amounts that were loaned to him. When she purchased a new car, she sold her old one to him for cash. Wife's testimony indicates substantial support for the finding that husband relinquished all claim to her earnings at the commencement of her business career in 1932. Such evidence is sufficient. It is the law of California that the husband may relinquish to the wife the right to her earnings during her coverture without any consideration other than their mutual consent, whereupon her earnings become her separate estate. Evidence of the husband's conduct indicating his attitude that her earnings were her separate possessions is sufficient proof. (*Pacific Mutual Life Ins. Co. v. Cleverdon*, 16 Cal.2d 788, 791 [108 P.2d 405] ; *Dee* v. *San Francisco etc. System*, 80 Cal.App.2d 590, 591 [182 P.2d 601].) Therefore, from the evidence, the finding made was the only reasonable determination.

### Wife's Explanation of Her Writings

Husband contends that since there was no express agreement that her earnings should be separate, there is no proof to support the finding that he relinquished all interest in her earnings except the inference drawn from his silence on being advised of her purpose. Such inference he contends must yield to the direct unequivocal evidence of her writing in the joint income tax returns she made in the four years

commencing with 1942 in which she reported her earnings as community property. In support thereof he cites *Blank* v. *Coffin*, 20 Cal.2d 457, 460 [126 P.2d 868] ; *Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal.2d 64, 70 [77 P.2d 1059] ; *Roberts* v. *Brae*, 5 Cal.2d 356, 359 [54 P.2d 698] ; *Maupin* v. *Solomon*, 41 Cal.App. 323, 324 [183 P. 198].) The rule announced by cited cases is that for the inference to be dispelled the contrary evidence needs only to be clear, positive and uncontradicted. Wife's testimony was that by reporting her earnings as community receipts she did not intend to change their character but acted upon the suggestion of a tax accountant and that she did not understand the meaning of so reporting until 1947 when she consulted a lawyer concerning her domestic infelicities. Her testimony was not only direct but persuasive. If she had acted upon the advice of a person who she thought could wisely advise her, the court was privileged to accept her explanation of her writing.

### OTHER CONTENTIONS OF HUSBAND

 Husband insists that his contention is supported by the principle that earnings of a wife are community property, citing *Bekins* v. *Dieterle*, 5 Cal.App. 690 [91 P. 173] ; *Stice* v. *Stice*, 81 Cal.App.2d 792, 797 [185 P.2d 402] ; *Heck* v. *Heck*, 63 Cal.App.2d 470, 474 [147 P.2d 110].) These authorities involve the problem of determining whether property acquired prior to marriage was community. It was held that the tax returns were sufficient to establish that the assets were community property. But in every such case* the fact finder had to determine from all the evidence before him whether the property in question was community or separate. Such finding is binding upon the court of review in the absence of error. (*Nichols* v. *Mitchell*, 32 Cal.2d 598 [197 P.2d 550].) Since the evidence herein upon which the court based its finding of the husband's relinquishment of claim of ownership of a share in the wife's earnings is reasonable and credible the reviewing court cannot say that, the trier of fact abused his discretion in making his determination. (*Balkema* v. *Deiches*, 90 Cal.App.2d 427, 430 [202 P.2d 1068].)

Husband contends that aside from the doctrine that inference is overcome by written evidence, the wife's recital in her income tax returns is conclusive proof that her earnings

---

*Including *Estate of Raphael*, 91 Cal.App.2d 931, 939 [206 P.2d 391]; *Kelley* v. *State Board*, 82 Cal.App.2d 627, 633 [186 P.2d 429]; *Estate of Allan*, 28 Cal.App.2d 181, 187 [82 P.2d 190].

were community property, citing *Estate of Watkins*, 16 Cal.2d 793, 797 [108 P.2d 417, 109 P.2d 1]. The cited case is not authority for husband's claim. There the spouses had executed a joint and mutual will, a single document that was the equivalent of a contract, whereas herein the wife's returns were separate documents, addressed not to the husband but to the government.

Husband contends that in making the tax returns wife was acting as his agent and that having made affirmative written representations that the earnings were community property, she is estopped in her action against her principal to contend otherwise, citing *Wood* v. *Blaney*, 107 Cal. 291, 294-5-6 [40 P. 428].) The cited case is not authority. There the agent executed a contract of sale on behalf of his principal reciting the receipt of $500 as deposit although he had received a worthless note. The agent was estopped to contradict the recitals in the contract. In the instant case wife made no statements for the purpose of deceiving her husband; nor did she make any with culpable negligence. The husband had knowledge of the true state of the title of the earnings; he did not rely upon her statements as inducements to do some act to his detriment; he will not be criminally liable since the returns were not fraudulently made or falsely filed. In no sense was his relationship to the wife's earnings altered. While it is true that husband by approving of the returns subjected himself to a possible liability for a deficiency tax, he is not injured thereby since the wife agreed to pay all the unpaid tax on his income for the five years reported on the community basis as well as any due on her own.

## HUSBAND NOT ENTITLED TO REFUNDS

Finally, husband complains that injustice is done by the judgment in awarding wife any refunds on her taxes paid during the five years she reported on the community basis; that the decree does not require her to file amended returns and compels him to become a party to a fraud on the government. To concede such demand would be unfair. Wife paid all the taxes during the same five years. Why should any portion of a refund go to him who did not make the slightest contribution to the payment? It was the duty of the court to dispose of all issues with respect to the property claims of the parties. (*Mergenthaler* v. *Merganthaler*, 69 Cal.App.2d 525, 528 [160 P.2d 121].) It would have been improper for

the court to order the wife to file amended tax returns (*Hansen* v. *Bear Film Co.*, 28 Cal.2d 154, 176 [168 P.2d 946].)

### Order for Wife to Pay Husband's Attorney
### Not Abuse of Discretion

■ While the wife approves of the judgment insofar as it entitles her to a divorce and determines that the property is not community, she is displeased with the court's order which directs her to pay $1,500 to husband's attorney in addition to the $500 which the court had previously required wife to pay "on account of attorney's fees . . . and court costs in the sum of $100." She contends that the court is without authority to make such an award out of a wife's separate estate in favor of a husband; that the power to award suit money is a creature of statute and was not available at common law, citing *Eisenring* v. *Superior Court*, 34 Cal.App. 749, 750 [168 P. 1062.] But notwithstanding the apparent absence of statutory provision for the enforcement of the order, section 137 of the Civil Code clearly provides that the court may in its discretion require the wife to pay "any money necessary to enable . . . the husband to . . . defend the action." In the enactment of such statute the Legislature did not intend that it should not be enforced. It is true that section 141, Civil Code, makes provision for the court to resort first to the community property and then to the separate property of the husband and from this the wife argues that the court is precluded from awarding suit money to the husband payable out of the wife's separate estate. But section 141 is embalmed in the same language in which it was written in 1872 whereas the Legislature having concluded that section 137 of the Civil Code was antiquated and deeming its amendment essential to the needs of society, so amended it in 1927 as to authorize the courts to award suit money to the husband in a divorce action when necessary to enable him to make a defense. The omission to include the separate property of the wife in section 141 at the time of the 1927 amendment to section 137 is obviously an oversight which should not deprive a litigant of rights definitely established by section 137. Where a statute adopts by reference the provisions of another statute, such provisions so adopted are incorporated in the form in which they existed at the time of the reference and not as subsequently modified. (*Palermo* v. *Stockton Theatres, Inc.*, 32 Cal.2d 53, 58 [195 P.2d 1].) In problems of statutory construction it must be assumed that the Legislature intended its

acts to have effective operation and that subsequent amendments or failure to amend a conflicting statute will not be construed as depriving the adopting statute of all the effect intended for it by the Legislature. (See *Ramish* v. *Hartwell*, 126 Cal. 443, 447 [58 P. 920].)

It is the general rule that statutes are to be given a reasonable interpretation to the end that the object and purpose of the law will be effectuated and also "affirmative expressions in a statute introducing a new rule imply a negative of all not within their purview." (*Johnston* v. *Baker*, 167 Cal. 260, 264 [139 P. 86].) Since one of the purposes of section 137, Civil Code, is to assure a needy spouse of funds to defend an action (*Mudd* v. *Mudd*, 98 Cal. 320 [33 P. 114]) the only rational disposition to be made of a divorce controversy is to require payment by the wife out of her separate property when the financial condition of the husband requires it to be done in the interest of justice.

The wife further contends that there is no finding or evidence of need on the part of the husband and that the contrary is shown by the finding that he was earning in excess of $5,000 per year and was able-bodied and in good health, citing *Loeb* v. *Loeb*, 84 Cal.App.2d 141 [190 P.2d 246]. Sufficient need on the part of the husband was established by affidavits filed by him on his application for his order to show cause. He was then earning $284 per month while his expenses were $351.50. His salary was increased, but his expenses and taxes likewise increased. Here was a fairly sizable estate under investigation by the trial court and it was not an easy matter for decision as demonstrated by the exemplary briefs. The trial court might with reason have made different findings, so acute was the controversy. The case cited by the wife (*Loeb* v. *Loeb, supra*) is authority for the rule that the allowance of suit money rests with the sound discretion of the trial court.

The judgment is affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied May 2, 1950, and defendant and appellant's petition for a hearing by the Supreme Court was denied June 12, 1950.