[Civ. No. 17030.  Second Dist., Div. Two.  Nov. 7, 1951.]

EDITH LOUISE LAWRIE KOPASZ, Respondent, v. JOHN CHARLES KOPASZ, Appellant.

Blanche & Fueller for Appellant.

Louis Kaminar and William U. Handy for Respondent.

MOORE, P. J.—Defendant appeals from a decree of separate maintenance awarded to his wife Edith on the grounds of the husband's cruelty and desertion. He set up as an affirmative defense to the action a purported divorce decree he had previously obtained in the State of Nevada on July 3, 1945. This defense was rejected. The Nevada decree was held to be invalid and of no force or effect on the theory that the Nevada court was without jurisdiction. Such determination was based upon the trial court's finding that appellant had never established a bona fide domicile in our sister state.

Appellant contends that the finding is unsupported by the evidence. Thus the primary issue is whether there is sufficient, substantial evidence in the record that will support the judgment. ■ It is a truism that a finding on the issue of domicile, based upon conflicting evidence, is conclusive upon this court. (*Re Winzeler's Estate,* 42 Cal.App.2d 246, 249 [108 P.2d 720]; *Estate of Peters,* 124 Cal.App. 75, 77 [12 P.2d 118].)

Appellant and respondent have known each other since 1939 in New York. They were married November 5, 1942, at appellant's army station in Colorado. After residing in Denver with her husband for 10 days, respondent returned to New York to complete her nurse's training. Appellant was transferred to Camp Warren, Wyoming, at which location the

parties lived together during March and April, 1943. On June 12, 1943, appellant was sent to Las Vegas, Nevada, where his duty lasted until October. He was then sent to Camp Lee, Virginia, but returned to Las Vegas in March, 1944, for further military service and there remained until May of the same year when he was transferred elsewhere. His only subsequent visits to Nevada occurred in April, 1945, for the purpose of filing his divorce action, and again in July, 1945, to attend the divorce trial.

Appellant's claim to domicile in Nevada is based upon such military residence there from June to October, 1943, and from March to May, 1944. ■ Without question he could have established a domicile there, since the state of one's domicile is primarily determined by one's intention. ■ Enlistment in the military service and compliance with the army's orders with respect to locality of military service does not necessarily effect a change of the soldier's legal domicile even though he be transported 2,000 miles from his place of enlistment. (*Johnston* v. *Benton,* 73 Cal.App. 565, 569 [239 P. 60]; 17 Am.Jur., § 73, p. 634.)

■ The record contains substantial evidence from which the court reasonably inferred that appellant during his two brief sojourns in Nevada never formed an intention to remain there permanently or indefinitely. Appellant was officially ordered to Nevada by military authorities. He had never been there before except for one night. While there as a soldier he lived on the army base, in hotels, motels and rooming houses. He never cast a ballot or registered to vote in Nevada; never owned property or worked there as a civilian. While there he corresponded regularly with respondent, yet he never informed her of any change of domicile. On the contrary, he expressed dissatisfaction with conditions in Nevada; complained about the climate and living accommodations in the town where he stayed and referred to his army post as "stinking." He declared that he was anxious to be transferred to the east. He requested respondent to keep in touch with one of his former eastern business associates as the "war could end abruptly." While in New York City on leave in December, 1943, he discussed plans for going into business there after the war. Finally, to seal the proof of his domiciliary intent, less than a month after obtaining the Nevada decree, appellant remarried in Santa Ana, California, and has since resided in this state. Such behavior and declara-

tions of appellant made without any apparent object to deceive those to whom they were addressed are competent evidence of his intention. (*Warren* v. *Warren*, 127 Cal.App. 231, 240 [15 P.2d 556]; 10 Cal.Jur., § 372, pp. 1155-56.) Other proof reflects the nonexistence of an intent on the part of appellant to acquire a Nevada domicile but the above furnishes ample support for the finding adverse to appellant's contention. It follows that this court is powerless to alter the conclusion that the Nevada court was without jurisdiction to render its decree.

Appellant's second assignment of error is that the allowance of $125 per month for maintenance and support of respondent and the allowance of $750 as counsel fees for his wife's attorneys are excessive and beyond his ability to pay.

The determination of a woman's needs and of her husband's ability to pay rest in the sound discretion of the trial court. Only upon a showing of an abuse of such discretion will the appellate court interfere. (*Hopkins* v. *Detrick*, 97 Cal.App.2d 50, 59 [217 P.2d 78]; *Melny* v. *Melny*, 90 Cal.App. 2d 672, 679 [203 P.2d 588].)

The record herein reveals that appellant earned approximately $3,000 during 1947 while working as a real estate broker. He testified that he did not know the extent of his earnings in 1948 to the date of the trial—September 7—but that he thought his books would show that he was not breaking even during September. His "books" consisted of numerous folders containing loose bills. The court suggested that appellant prepare some sort of statement or summary of the records and refused the documents as such. Appellant never offered such statement to the court. Moreover, his testimony revealed that he also received a government pension of $157.50 per month, and that his new wife was the possessor of independent means. From the facts established it was not an arbitrary finding that appellant had an income of approximately $400 per month.

Appellant argues that it was shown that respondent was employed as a nurse earning a salary of $2,400 per year and that consequently her need was not shown. However, testimony in the record shows that respondent was then on an indefinite leave of absence from her work, presumptively without pay, that she had recently undergone two serious major surgical operations and was not then in good health, being unable to remain upon her feet for long periods of time.

She testified that she was then in debt by reason of her surgical and medical care in the sum of $500.

Judgment affirmed.

McComb, J., concurred.

A petition for a rehearing was denied November 28, 1951, and appellant's petition for a hearing by the Supreme Court was denied January 3, 1952. Schauer, J., voted for a hearing.