[Civ. No. 4870.   Fourth Dist.   Aug. 31, 1954.]

Estate of MAX KALBEN, Deceased. IRIS MILLER et al., Appellants, v. CORINNE KALBEN, Individually and as Administratrix, Respondent.

Kerber B. Gibbs and Johnson & Johnson for Appellants.

Atherton & Atherton for Respondent.

BARNARD, P. J.—This is a proceeding to determine to whom distribution of the estate of the deceased should be made. The two children of the deceased, by a prior marriage, filed a petition alleging that certain household furniture and a savings account for $1,167.29 were the community property of the decedent and his widow Corinne Kalben; that three

parcels of real property were the separate property of the deceased; and that they are entitled to two-thirds of such property. Judgment to that effect was prayed for. In response thereto the surviving widow claimed all of said property, as community property.

After a hearing the court found that all of the property in question was the community property of the decedent and his surviving spouse; that any property owned by Max Kalben at the time of his marriage to Corinne Kalben was thereafter commingled with the community property of the parties; that any separate interest owned by the decedent at the time of that marriage was transmuted from separate property to community property, and commingled with community earnings after said marriage; that it was the intention of these parties that all property acquired by either or both, before as well as after marriage, was to be community property and to go to the surviving spouse upon the death of the other; that Max Kalben did not leave any separate property; and that the petitioners have no interest in said real property and no interest in the estate. The petitioners have appealed from the judgment which followed.

The deceased was born in Germany and died intestate on December 31, 1952. He was then 78 years old and his widow was 68 years of age. His former wife, the mother of petitioners, obtained a final decree of divorce from the decedent in April, 1939, and by a property settlement agreement the decedent transferred most of his property to that wife and the two children. There is evidence indicating that the decedent's excessive drinking led to that divorce. The decedent married Corinne Kalben on October 25, 1943, and they lived together until the time of his death. Both of them worked, and both made substantial contributions toward paying for the properties here in question.

Of the three properties involved one was purchased prior to this marriage and two shortly thereafter. Title to all three was taken in the name of the decedent. Parcel 1 was purchased on July 6, 1939, for $5,000. The deceased paid $500 cash and executed a trust deed for $4,500 payable at $35.60 a month, including interest. Payments were regularly made up to and after this marriage. Parcel 2 was purchased on December 31, 1943, for $12,000. The decedent paid $4,000 and Corinne Kalben paid $4,000 of the down payment of $8,000. A trust deed was given for the balance of $4,000 payable $65 a month, including interest. Mr. and Mrs. Kalben then

bought furniture for that property for $1,100 on a contract, which was paid off at $100 per month. They then borrowed $1,000 from a bank to pay for electric wiring on the property, which was paid off in monthly installments. Some years later, they borrowed $8,000, giving a trust deed payable at $80 per month, which was used to build some stores on the front of this property. At the time Mr. Kalben died, $7,704.80 remained unpaid on this trust deed. Altogether they made improvements on this property which cost a total of $11,000. Parcel 3 was purchased on March 23, 1944, for $4,000. A down payment of $1,000 was made by Corinne Kalben from her separate funds. A trust deed for the balance of $3,000 was given, payable at $30 a month including interest. On the day this property was deeded to Max Kalben, Corinne Kalben executed a deed conveying it to him as his separate property. This property was sold during administration and a balance of $4,500, secured by a trust deed, remains for distribution.

The appellants contend that the evidence is insufficient to support the findings and judgment of the court; that the court erred in holding that the community and separate property of the parties, together with the rents, issues and profits from the same, were commingled and could not be traced; and that the court erred in holding that the real property involved became community property by transmutation, by commingling, and by agreement.

There is very little conflict in the evidence, although the appellants contend that respondent's testimony was self-serving and unsupported by other evidence. It was supported by the testimony of four other witnesses, and the matter of credibility was one of fact for the trial court. The only definite evidence with respect to funds owned by the decedent at the time of this marriage is that he had made a down payment of $500 on Parcel 1 and had paid the monthly payments thereon until the marriage, and that he paid $4,000 down on Parcel 2, which would make a total of approximately $5,500. The respondent had $6,000 in cash at the time of the marriage and she later received $1,650 from her father. She testified that, in addition to the $5,000 she paid down on the two parcels, she put the rest in the common fund, making a total contribution of $7,650. She worked in stores all of the time during this marriage, except for some four or five months, and received in excess of $200 a month most of the time. The decedent worked much of the time, making about $100 a month, and worked a great deal of the time in remodeling the build-

ings on these properties for the purpose of increasing the rentals therefrom. They lived in the second story of a house on Parcel 1, and lived frugally in order to use all available money in paying for and improving these properties.

These parties had no bank account during the marriage, except for the small savings account which is not here involved. The undisputed evidence is that, except for the down payment on Parcels 2 and 3, all monies they had or received from every source, including their earnings, rentals from the properties and some gifts to the respondent from her father, were placed from time to time in the drawer of a desk in their home, and that all bills were paid from this common fund as the occasion demanded, including payments on the trust deeds, bills for improvements on the properties and living expenses. The evidence shows a complete commingling of the community property with any possible returns from separate interests and it would be absolutely impossible, from the evidence, to segregate these elements even as between rentals and community earnings.

While conflicting inferences might be drawn from some of the evidence, there is ample evidence that these parties intended to transmute any separate interest from separate property to community property and to commingle the same, and that it was the intention of both parties that all of said property, with the income therefrom, was to be community property and was to go to the surviving spouse upon the death of either. (*Kenney* v. *Kenney*, 220 Cal. 134 [30 P.2d 398].)

Three witnesses, aside from the respondent, testified to declarations made by the decedent supporting these conclusions. The decedent repeatedly told the respondent that they owned the property together and frequently referred to it, in speaking to her and others, as property ''we'' own. There is no evidence that he ever referred to any of the properties as belonging to him alone. On one occasion, he told his son-in-law that he wanted all the property to go to Corinne when he died. He told another witness that his wife was a wonderful woman and ''a great deal of help in buying this property that they were buying.'' He told this same witness that with his wife's help he was able to finish paying for Parcel 1, and that ''they'' had purchased Parcel 2.

This evidence is further supported by evidence relating to the filing of income tax returns, and evidence of declarations made in that connection. (*Heck* v. *Heck*, 63 Cal.App.2d 470 [147 P.2d 110]; *Hopkins* v. *Detrick*, 97 Cal.App.2d 50 [217

P.2d 78]; *Estate of Raphael,* 91 Cal.App.2d 931 [206 P.2d 391].) A tax consultant testified that he discovered in 1950 that the respondent had filed a separate return covering wages she received in 1947 and 1948, and that the decedent had filed joint returns including some of the same income. On his advice an amended return was filed for those years and a refund obtained. In that connection the respondent filed an affidavit stating that the amended return for 1947 and 1948 showed one-half of the income reported by herself and the other half by her husband as community income. The affidavit filed by the decedent stated that the prior returns had been made by mistake and that an amended return for 1947 and 1948 was filed therewith, showing one-half of the income for himself and the other half for his wife. Income tax returns were filed for 1950, 1951 and 1952, copies of which were admitted into evidence; all being joint returns, including all wages, salaries and rentals. This tax consultant testified that he explained to the decedent, in the presence of the respondent, the difference between community property and separate property, and that the decedent stated that their property was all community property, that it was jointly owned, and that they owned all of the property and all of the income together.

The fact that these properties were originally deeded to decedent is not controlling under the circumstances which here appear. It is the intention of the parties rather than the form of the conveyance that determines the character of the property. (*Tomaier* v. *Tomaier,* 23 Cal.2d 754 [146 P.2d 905]; *Socol* v. *King,* 36 Cal.2d 342 [223 P.2d 627].) This is particularly true here where one of the properties was purchased before and the other two shortly after the marriage, and where all subsequent payments on the purchase price were made out of this common fund. Whatever the original intent was, a change of intent is sufficiently shown by the conduct of both parties and the other evidence.

The same applies to the deed from the respondent to the decedent at the time Parcel 3 was acquired. Whatever the original purpose of that deed, the payments on the trust deed on this property were all made from the commingled funds of the parties, and the evidence is that this property and its rentals were for nearly 10 years treated by the parties as community property. Moreover, the respondent testified with respect to this deed that her husband asked her to sign something and she signed it; that she did not know what it was or what its effect was; that she did not intend to give up her

interest in this property; that he did not repay her the $1,000 she had paid as the down payment, and she never intended him to do so; and that both of them made payments on the trust deed thereafter, taking the money from their common fund.

The respondent and her witnesses were believed by the trial court, any factual questions were resolved in her favor, and the evidence supports the findings made.

The judgment is affirmed.

Mussell, J., concurred.