[Sac. No. 4388. In Bank.—August 12, 1931.]

W. A. ROBINSON, Respondent, v. GEORGIA M. HOALTON et al., Defendants; HARRIET W. STEWART, as Administratrix, etc., Intervener and Appellant.

Eugene Selvage for Appellant.

Irwin T. Quinn for Respondent.

CURTIS, J.—This action was instituted to foreclose a mortgage given to secure a promissory note for $2,200, executed in favor of the plaintiff by the defendants. In their answer the defendants did not contest the execution and delivery of the note and mortgage, but set up as an affirmative defense to said action that the money, loaned them and to secure which said note and mortgage were given, was not the money of the plaintiff, but that it belonged to and was the money of Minnie Robinson. A cross-complaint was filed by defendants, setting up the same facts as were alleged in defendants' affirmative defense, and praying that the action abate for the reason that it was not prosecuted by the real party in interest. An amended cross-

complaint was later filed, the allegations of which were not materially different from those of the original cross-complaint. An answer to this amended cross-complaint was filed by the plaintiff. This was the condition of the pleadings at the time the case was called for trial when, by leave of court, a complaint in intervention was filed by Harriet W. Stewart, as administratrix of the estate of Alba G. Robinson, deceased. An answer to the complaint in intervention was made by plaintiff and the action proceeded to trial manifestly upon the complaint, the complaint in intervention and the answer thereto. The defendants evidently abandoned their cross-complaint, as no mention thereof is to be found in the findings or the judgment. The same attorney represented both the defendant cross-complainant and the plaintiff in intervention. The appeal from the judgment, which was in favor of the plaintiff and against both defendants and the intervener, was taken only by the intervener. The only parties therefore before this court are the plaintiff and the intervener. In her complaint in intervention, the intervener, as the administratrix of the estate of Alba G. Robinson, deceased, claimed that the money loaned to the defendants and secured by said note and mortgage, was the property of the said estate, and asks for a decree declaring that plaintiff holds said note and mortgage in trust for said intervener.

The trial resulted in a judgment and decree in favor of the plaintiff, foreclosing said mortgage and declaring that the entire proceeds of the sale be paid to the plaintiff. This judgment was predicated upon findings and conclusions of the trial court, fully supporting said judgment.

W. A. Robinson, the plaintiff herein, is the son of Alba G. Robinson, deceased. The defendant Georgia M. Hoalton, the intervener Harriet W. Stewart and Minnie Robinson are the daughters of said deceased, and sisters of the plaintiff. During his lifetime Alba G. Robinson was the owner of a small dairy farm near Rio Dell in Humboldt County. He made his home with his wife and children on this farm for many years prior to his death. Some years before the death of their father, the defendant Georgia M. Hoalton, then Georgia M. Robinson, and Harriet W. Stewart, then Harriet W. Robinson, having married and made homes for themselves, left the family homestead. The plaintiff and Minnie Robinson never married during the lifetime of their parents.

They remained with their father and mother on the farm until the death of the father. Minnie Robinson was defective mentally; she never married, and the plaintiff never left the farm until some time after the death of his parents. He assisted his father in the care of the farm and, after old age had rendered the father physically unable to perform manual labor, the plaintiff assumed active management of the farm and performed practically all the labor required for its upkeep.

On January 16, 1913, Alba G. Robinson executed a grant deed of the farm to the plaintiff, reserving, however, a life estate therein to himself, his wife and his incompetent daughter, Minnie Robinson, with a stipulation therein that the plaintiff should pay to Georgia M. Hoalton, one of the defendants, and Harriet W. Stewart, the intervener, the sum of $500 each. It was following the execution and delivery of this deed that the plaintiff assumed and actually took practically the entire management of the farm. Alba G. Robinson died intestate on November 9, 1916, his wife having predeceased him. After the death of his parents, the plaintiff continued to operate the farm and to provide a home for his incompetent sister. In the course of time he paid the sum of $500 to each of his sisters, Georgia M. Hoalton and Harriet W. Stewart, as directed by the grant deed from his father. In January, 1921, plaintiff sold considerable personal property, consisting of some fourteen head of cows, a horse, a plow, a disc harrow, mowing machine and rake, for which he received between $2,300 and $2,400. Of this amount he loaned to the defendants Georgia M. Hoalton and her husband the sum of $2,200 and, to secure the payment thereof, received from them the note and mortgage which are the subject of this action. At the time of the execution and delivery of the deed from Alba G. Robinson to the plaintiff, there was a small amount of personal property on the farm belonging to the father. No mention of this personal property was made in said deed, and there was no written evidence of the sale or gift of it to the plaintiff by his father. The plaintiff, however, testified that at the date of the delivery of said deed, his father gave to him all the personal property then on the farm. The court found in accordance with this testimony. It further found that plaintiff "sold said personal property in January of 1921 and that

thereafter and on April 18, 1921, he loaned some of the funds derived upon the sale of said personal property to the defendants, secured by a mortgage as set forth in the complaint. That said funds were plaintiff's own personal property," and that neither Harriet W. Stewart, as administratrix, nor the estate of Alba G. Robinson, deceased, had any interest in the same, nor did plaintiff hold the same in trust for the intervener.

This finding is in our opinion fully sustained by the evidence. The plaintiff testified that his father at the time he executed the deed to the real property referred to above, "turned over" the personal property then situated on the ranch. His testimony was as follows: "Q. What did your father tell you at that time? A. . . . he would turn the thing over to me. He said I worked there long enough, and cooked and helped around the house. He was getting old and he was not able to do work. . . . Q. Well your statement was that he will turn the thing over to you. He didn't say anything about turning the farming wagon over to you? A. I said the things, farming things. Q. He said I will turn the farming implements over to you? A. Yes sir. . . . Q. Did. he say I will turn the stock over to you? A. Yes sir." While in other parts of Robinson's testimony are found statements which to a certain extent might be held to conflict with these just quoted as to the exact words used by the elder Robinson on the occasion mentioned, it was the province of the trial court to weigh the evidence as a whole and determine for itself which of the conflicting statements, if there was any conflict in them, to accept. Having found that "Alba G. Robinson did during his lifetime convey all of the personal property on the Robinson ranch near Rio Dell in said county and state, to his son, W. A. Robinson" we must assume that the trial court accepted the testimony of the plaintiff set out above as the true account of the transaction, which took place between father and son regarding the personal property, at the time the father made the conveyance of the real property.

It is contended by appellant, however, that even if we accept the evidence of the plaintiff as above related, still it is not sufficient to show a gift of the personal property by the father to the plaintiff, for the reason that a verbal gift is not valid unless there is an actual or symbolical

delivery of the thing to the donee. While this is undoubtedly the general rule, it is not always strictly applied, especially when the parties to the gift are members of the same family and occupy the same house as a home. ''The rule as to delivery is not so strictly applied to transactions between members of a family living in the same house, the law in such cases accepting as a delivery acts which would not be so regarded if the transactions were between strangers living in different places. It is not required that the thing given should be removed from their common residence. It is sufficient, if it clearly appears that the donor has relinquished, and the donee has acquired, all dominion over and control of the property, but even in such cases there must be something to show that the gift was completed.'' (28 Cor. Jur. 638.) ■ This exception to the rule we think is fully met by the facts in this case. While the property in question was not in the house in which the parties resided, it was upon the lands upon which they made their home. Most of the property was used in the care of the ranch and for the common good of both parties to the gift. The father having made final disposition of all his real property, it is only natural to suppose that he would take the same action regarding his personal property. As evidence that he had surrendered all control over his personal property, it appears that after the gift thereof to the plaintiff, the latter not only assumed entire charge of the ranch, but from that time on dealt with the personal property as his own, without any objection from his father. Furthermore, for almost five years after the death of his father and until its sale in January, 1921, he continued to use and treat the property as his own, even to the extent of selling the whole thereof without any objection or question by the appellant or her sister, Mrs. Hoalton. After the sale and in the following April he loaned the greater part of the money received from said sale to Mrs. Hoalton as his own money, neither of these sisters disputing his right to do so. It was not until this action was brought in September, 1927, over ten years after the death of the father and more than five years after the personal property was sold and the loan made to the Hoaltons, that either Mrs. Hoalton or Mrs. Stewart made any claim that their brother was not the absolute owner of said personal property, or the proceeds of the sale thereof. And

another full year went by before the intervener, having in the meantime been appointed administratrix of her father's estate, made claim that the money derived from the sale of said personal property belonged to her father's estate.

We think this evidence is sufficient to show that the elder Robinson relinquished to his son, and the latter acquired all dominion and control over, said personal property at the date shown therein, and that the gift was completed at said date. Furthermore, it seems inconceivable to us, if these two sisters had any question as to their brother's right to said personal property, that they would have remained silent during all these years and made neither claim to the property, either as heirs of their father or otherwise, nor protested against their brother's continued assumption of ownership over it. The further fact is significant that one of them went to the extent of borrowing from the brother as his money, practically the whole amount for which the personal property was sold.

Appellant relies with considerable assurance upon the fact that the elder Robinson, during the three years intervening between the time when plaintiff claims a gift of the property to him and the death of his father, returned this personal property to the county tax collector as his own property. Appellant contends this evidence shows conclusively that the father had not relinquished all control over said personal property. We do not regard this evidence in any such conclusive aspect. It was only one of the circumstances to be considered by the trial court in passing upon the validity of the asserted gift. This evidence is considerably weakened in our opinion by the further showing that the elder Robinson, after the conveyance of his real property, returned the same for three successive years as his own property. Evidently in making his annual return to the county assessor, after the transfer of his property, he simply followed the course pursued by him in the years preceding the transfer. No question is made as to the validity of the transaction involving the transfer of his real property. The circumstance, therefore, that in his assessment returns for these years, he had also included the personal property as his own cannot be given any great significance. At most it would not be determinative of the validity of the gift of the personal property.

From the foregoing we conclude in the first place that, under the circumstances surrounding the parties, the evidence was sufficient to show a gift of said personal property by the elder Robinson to his son, the plaintiff herein, and that the conduct of the intervener and her sister, Mrs. Hoalton, for a period of over eleven years after the death of their father, was inconsistent with any theory that they, as heirs of their father or otherwise, ever had any interest in the personal property in question, or to the proceeds of its sale. After remaining silent all those years, it would tax the credulity of any court to believe that the belated assertion of their claim rested on any substantial grounds.

The judgment in our opinion should be affirmed and it is so ordered.

Langdon, J., Preston, J., Seawell, J., Shenk, J., and Waste, C. J., concurred.