[Civ. No. 7011. Third Dist. Sept. 30, 1944.]

FRANCES GRAHAM, Respondent, v. CATHERINE GRIFFIN et al., Appellants.

[Civ. No. 7012. Third Dist. Sept. 30, 1944.]

CATHERINE MARY GRAHAM, Respondent, v. CATHERINE GRIFFIN et al., Appellants.

Seth Millington for Appellants.

E. Vayne Miller, Cpl. Ivan C. Sperbeck and Robert W. Zarick for Respondents.

THE COURT.—The controversy involved in this appeal arose out of the arrest of plaintiffs Frances Graham and Catherine Mary Graham, upon a criminal complaint sworn to by the defendants, charging them jointly with the theft of four head of cattle. They were taken into custody and later released upon the posting of bail in the sum of $1,000 each. At the conclusion of the preliminary hearing, at which plaintiffs did not testify, they were held to answer in the superior court. Shortly after the filing of an information in the superior court containing two counts charging the plaintiffs with the crime of grand theft, the district attorney moved to dismiss the charges upon the grounds of "furtherance of justice and because of insufficiency of evidence to convict." In addition to opposing the motion plaintiffs urged that they be given a trial on the merits. The court, however, in denying their request, granted the motion of the district attorney and dismissed the charges accordingly. After the dismissal of the criminal proceedings

plaintiffs filed identical complaints alleging that the acts of defendants in causing their arrest upon the charges of grand theft were malicious and without probable cause. Defendants answered, denying that such acts were malicious or without probable cause and alleging that "the causing of the arrest of plaintiff was done without malice, in the desire to carry out justice, and with ample probable cause to believe that the plaintiff was guilty." At the conclusion of the trial the verdict of the jury awarded damages to each plaintiff in the sum of $6,250. A motion for a new trial was then made by defendants upon the following grounds: (1) Excessive damages, the result of passion and prejudice, (2) insufficiency of the evidence, (3) that the decision was against law, and (4) errors in law occurring at the trial and excepted to by defendants.

In passing upon such motion, the trial court, in an exhaustive memorandum opinion, denied the same as to items (2), (3) and (4), but qualifiedly found in favor of defendants in regard to item (1), and in accordance with such finding entered its order that if, within twenty days after such entry, the plaintiffs should file a written remission of all damages awarded in excess of the sum of $2,000 in each case, and agree to accept such sum, together with costs, the motion for a new trial would be denied, otherwise it would be granted. Within the time specified plaintiffs filed such agreement and remission with the court, and judgments were entered accordingly. The defendants have appealed from the original judgments as well as the modifications thereof, contending (1) that they had ample probable cause; (2) that there was no element of malice; (3) that plaintiff Frances Graham had no legal title to the cows; (4) that the court committed error in statements to the jury and in its refusal to give certain instructions requested by defendants, and also that counsel for plaintiffs was guilty of gross misconduct.

The common ancestor of plaintiffs and defendants was one Bridget McConnell Graham, who owned a 1,250-acre ranch in Colusa County. At the time of the trial all parties owned certain undivided interests in the ranch which constituted a major portion thereof and which interests were held by them as tenants in common. On the ranch were two dwellings less than 300 feet apart; one was occupied by defendant Catherine Griffin, the other by plaintiffs. At the time of the arrest

of plaintiffs, defendant Glenn Griffin resided in San Francisco, although previously he had lived on the ranch with his mother.

Defendant Catherine Griffin was for a time the administratrix of the Bridget McConnell Graham estate, and after the death of plaintiffs' father in 1927, she continued managing the affairs of the ranch. She sold off the products, paid the taxes and other expenses. During all of this period the plaintiffs and their mother continued to make the ranch their home. There is evidence that a guardian appointed by the court during the plaintiffs' minority received ''partial distribution'' from the Bridget Graham estate.

It is conceded by all parties that for many years their associations had been decidedly unfriendly and hostile. The record reveals frequent quarrels concerning plaintiffs' interest in the ranch, their right to share in the products and the ownership of certain livestock which plaintiffs claimed as their own. Testimony was introduced by plaintiffs that during such quarrels they were called thieves and paupers, and that defendants threatened to call the sheriff, and actually did so. Plaintiffs testified that during such quarrels defendant Catherine Griffin told them she hated their whole family. There is further testimony that the defendant Glenn Griffin disconnected plaintiffs' domestic water supply, and that he threatened them with a shotgun when they endeavored to repair the pipe he had severed. Defendants threatened plaintiffs with a gun on other occasions.

It is agreed that at about 2:30 o'clock in the morning of April 21, 1941, the plaintiffs rounded up a cow and three heifers and drove them two and one-half miles to a neighbor's ranch where they were loaded on a truck, hauled to Marysville and there sold for $210.97. Plaintiffs' choice of the time of night to take the cattle has been vigorously assailed by defendants, both at the trial and in the briefs, as everything but the acts of an owner. Plaintiffs, however, reply that because of the previous threats and acts of violence of the defendants toward them they feared to attempt taking the cattle other than at the unusual hour they did.

The question of title to the four head of cattle sold by plaintiffs was bitterly contested at the trial and there is sharp conflict in the evidence on that subject. The plaintiffs produced testimony that their father, prior to his death, was

engaged in the business of buying and selling cattle, and that plaintiff Frances Graham, then a youngster, became attached to one of the calves he was about to sell, and pleaded with her father to spare it, whereupon he gave it to her. Mr. Graham died about a year later. This calf developed into a "red mulley cow" and calved, and her calves calved. Plaintiffs testified, as did another sister, that the four head sold by plaintiffs descended from this "red mulley cow" and therefore were the property of Frances, and that neither of the defendants had any title to any of the stock so sold.

On the other hand, defendant Catherine Griffin testified that she bought the calf from plaintiffs' father for $50 and this calf became the "red mulley cow." Defendant Glenn Griffin testified that for a few months he was in the livestock business; that in 1935 he and his partner closed out their cattle venture; that he retained and left on the Graham ranch a "stunted" calf that required milk to build it up. Plaintiffs agreed he did leave a calf but it was sick; that they tried to save it, and that it died in two days and they buried it on the ranch. Glenn Griffin testified that the cow and two of the calves sold by plaintiffs descended from the calf so left. there by him in 1935, and that the remaining calf sold by plaintiffs descended from the "red mulley cow" owned by his mother.

The cattle in question were taxed to Catherine Griffin and were not inventoried in the guardianship proceedings. However, plaintiffs testified that they repeatedly told Catherine Griffin that the cattle belonged to them, and not until after the arrest did she ever claim she had purchased the calf from plaintiffs' father.

In support of their first contention that there was ample probable cause, defendants argue that they acted on the advice of counsel, an attorney who had represented them for many years (but who had died since the filing of the criminal action), and the district attorney, both of whom advised them to file a criminal complaint.

 It is true that if the defendants satisfactorily showed that before the commencement of the prosecution, alleged to have been malicious, they were advised by counsel after a full and fair disclosure of all of the facts within their knowledge that the crime charged had been committed, and further showed that they had acted upon that advice in good faith,

they would have established a complete defense. (16 Cal.Jur. 741.) However, it is admitted in their brief that neither of them disclosed to either of the attorneys or the justice of the peace who issued the warrant that the plaintiffs claimed any interest in or ownership of the cows. This admission is substantiated by the testimony of the district attorney, who stated that the question of asserted ownership by the plaintiffs was not discussed at all, nor did he have any independent knowledge of the ownership of the cows. The justice of the peace likewise testified that he was not informed that the plaintiffs claimed any interest in the cattle. In the case of *Moore* v. *Durrer*, 127 Cal.App. 759 [16 P.2d 676], where a like defense was claimed, this court stated on page 767:

"To create a valid defense to a suit for malicious prosecution on the ground of reliance upon the advice of counsel, it is necessary to fairly and fully relate to the lawyer all the facts affecting the guilt or innocence of the accused person."

By reason of the issue of disputed ownership of the cows, the question of good faith in the disclosure of conflicting claims was a proper matter for the jury to determine. If they found that the defendants owned the cows, there could be no question of good faith in the statements made to the district attorney and the justice of the peace. However, if defendants knew that plaintiffs were claiming title to the cattle, and they failed to disclose such facts, there could not have been a full and fair disclosure, and unless the evidence revealed that such information was acquired by their personal attorney, the district attorney or the justice of the peace through some other source, defendants could not rely upon the defense of the advice of counsel. "In other words, if their advice was based entirely on a false statement of fact by appellant as to the ownership of the goods, it would be no defense to the action of malicious prosecution." (*Foster* v. *Banks*, 112 Cal.App. 622, 627 [297 P. 106].)

█ The second point urged is that there is no element of malice. The evidence substantially shows that the parties for years maintained a hostile attitude toward each other, deadly weapons were threateningly displayed, physical violence was inflicted, and much litigation instituted between them, some of which is still pending. In *Richter* v. *Neilson*, 11 Cal.App. 2d 503, 507 [54 P.2d 54], the court said:

"True, the role does not require a plaintiff to show that the

prosecution was impelled by personal hostility, a grudge, or ill will; but there must be evidence importing bad faith or want of sincere belief that the facts and circumstances justify the prosecution; and the malice must refer to the mind and judgment of the prosecutor in the exercise of the particular act charged as malicious prosecution.'' (Citing cases.)

In the oft-cited case of *Burke* v. *Watts,* 188 Cal. 118, 126 [204 P. 578], the applicable rule is thus stated:

''Malice in fact is really the foundation of the action and is usually the pivotal point upon which the action turns. It is always a fact directly in issue. Its existence may be inferred by the jury from want of probable cause for the prosecution, or from acts or declarations of the defendant expressing or indicating prejudice, ill will, or malicious motive in the matter of the prosecution. The want of probable cause does not raise a legal presumption of malice; the law presumes nothing on that issue any more than it does on any other issue of fact in a civil action. The jury may, however, if they find that there was no probable cause for the prosecution, infer malice therefrom, although malice is not a necessary inference to be deduced therefrom.''

▆ The third contention of appellants is that respondent Frances Graham ''had no legal title to the cow.'' In this regard it is argued that the claimed gift of the red calf from the father to her failed for lack of delivery and change of possession. Whether a delivery was made or the possession changed depends upon the facts surrounding the transaction. In view of the fact that all the parties were residing on the same ranch at the time the claimed gift was made, their respective dwellings being but two or three hundred feet apart, and the further fact that the respondents were reared on that ranch from childhood and were mere children, there was ample support for the implied finding of the jury in this regard, and we find no merit in such argument. (13 Cal.Jur. 38, 39; *Wiley B. Allen Co.* v. *Edwards,* 29 Cal.App. 184 [154 P. 1066].)

The first portion of defendants' final contention is directed at what is alleged to have been misconduct on the part of counsel for plaintiffs in his opening statement to the jury and in questions propounded to witnesses during the course of the trial. Defendants specifically cite four instances of such misconduct, but in only one did they request that the

jury be admonished by the court to disregard such statements. In that instance the request appears to have been but a part of an argument wherein counsel for defendants apparently assumed that plaintiffs' attorney was accusing him of stealing the cows, and it does not appear to have been a serious request on behalf of defendants. That such was the case is evidenced by the fact that defendants' motion for a new trial raised no issue of misconduct. (See *Weddle* v. *Loges,* 52 Cal. App.2d 115, 123 [125 P.2d 914].)

█ It is well settled that in order for an alleged act of misconduct on the part of counsel to be reviewed on appeal it must first have been called to the attention of the trial court in order that the court may have an opportunity to act upon such alleged misconduct at that time, and if possible to avoid error and prevent a mistrial. (2 Cal.Jur. § 90, p. 281.)

In view of the circumstances surrounding the present case it does not appear that counsel's opening statement to the jury was prejudicial error nor was it so objected to by defendants, rather it appears that such statement was within the realm of legitimate argument. (*Balkwill* v. *City of Stockton,* 50 Cal.App.2d 661, 673 [123 P.2d 596]; *Woebbe* v. *Sperry,* 48 Cal.App.2d 340 [119 P.2d 743].) ''Moreover, the appellant waived its objection to the challenged language by failing to assign it as prejudicial, and by omitting to ask the court to instruct the jury to disregard it.'' (Citing cases, *Balkwill* v. *City of Stockton, supra,* at p. 673.) █ Even if it be assumed that the remarks of counsel of which defendants now complain, were prejudicially erroneous, such error was cured by the general instruction of the court to the jury not to consider as evidence, statements or arguments by counsel made during the course of the trial, and to disregard the same unless made as stipulations or admissions relating to the existence of facts; that their decision should be based solely upon the evidence. (*Hoffman* v. *Southern Pacific Co.,* 101 Cal.App. 218 [281 P. 681].) See, also, *Healy* v. *Market Street Railway Co.,* 41 Cal.App.2d 733 [107 P.2d 488].

█ Defendants next complain of a colloquy between the trial judge and jurors who returned to court for an explanation of certain aspects of the case. We likewise find no merit in this contention. The court, in effect, properly told the jurors that the question of damages was solely within their province and that it could not discuss the matter or give any

enlightenment on the subject, other than to reread the instructions already given.

■ Defendants also contend that the court erred in making a voluntary statement during the trial as regards the rights of a person to take his own property "in the middle of the night or at any other time." It does not appear from the record that the court by such statement was attempting to instruct the jury but only was endeavoring to illustrate the meaning of certain words which had been used by the attorney for the defendants, and concerning which counsel for the plaintiffs had objected. All of the cases cited by defendants in support of such contention relate to the question of bailment—an issue which was not at all involved in the present controversy. Furthermore, in its instructions to the jury the court correctly stated the law as laid down in *Burke* v. *Watts, supra.* We fail to see how any prejudice could have been suffered by defendants under such circumstances.

■ Defendants further complain that the court erred in refusing two specified instructions proposed by them. There is no rule compelling a court to give every instruction offered or is it necessary that each instruction embody every fact or element necessary to sustain or defeat an action. ■ If, after the examination of the entire charge, it can be said that the court fully, fairly and clearly instructed the jury on all points of law material to the case and necessary for the information of the jury (8 Cal.Jur. 307 and cases cited), it is sufficient to defeat any claim of error predicated upon the defects of a particular instruction (*Henderson* v. *Los Angeles Traction Co.,* 150 Cal. 689 [89 P. 976]), or the failure of the court to give a certain instruction.

■ Lastly, it is contended that the judgments are excessive. The evidence shows that the respondents, young women, were arrested and detained in the sheriff's office, though not actually imprisoned; that they were fingerprinted and photographed with a number appearing on the photograph; that their arrest was published in the newspapers and broadcasted by radio; that in newspaper articles they were referred to as cattle thieves, and over the radio they

were referred to as cattle rustlers; that a citizen addressed one of the respondents as "cattle rustler." Under such circumstances the judgments are not excessive.

The judgment in each action is affirmed.

A petition for a rehearing was denied October 28, 1944.